# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

EZRIEL RAPAPORT,

    Plaintiff,

v.

AVI E. SOFFER,

    Defendant.

Case No. 2:10-CV-00935-KJD-RJJ

**ORDER**

Currently before the Court is Defendant's Motion to Dismiss (#8). Plaintiff filed a Response in Opposition (#13), to which Defendant filed a Reply (#19). Defendant filed a Supplement to the Motion to Dismiss (#22), and Plaintiff filed a Response (#23) to which Defendant filed a Reply (#24).

**I. Background**

The instant case arises from a dispute between Ezriel Rapaport, as Trustee of the Rapaport 2006 Grantor Trust ("Rapaport"), and Avi E. Soffer ("Soffer"), owner of the Watch Dealers Network ("WDN"). The dispute centers on a January 7, 2008, agreement ("the Agreement") between Soffer and WDN on the one hand and Rapaport on the other. The Agreement creates a new company ("the Company") controlled by a board with two members appointed by Rapaport and one by Soffer. The Company was to receive all of Soffer and WDN's watch-related assets in exchange for $500,000

from Rapaport and a 49% ownership share in the Company; the Company would then employ Soffer and others under certain terms and conditions. Over the course of the year, however, disagreements eventually arose between the parties concerning several issues under the Agreement.

As per the arbitration clause in the Agreement, Rapaport initiated arbitration on October 16, 2008, through the American Arbitration Association ("AAA"). Arbitration proceeded for several months, with each party paying their portion of the fees. Progress in the arbitration included a ruling by the arbitrator on May 27, 2009, that Martin Rapaport could be joined as a counter-defendant in the arbitration proceedings. At some point between May 27 and July 13, 2009, however, Soffer stopped paying his portion of the fees. The AAA asked whether Rapaport would be willing to pay Soffer's portion in order to proceed with the arbitration; when Rapaport declined and Soffer still had not paid, the AAA terminated the arbitration on October 7, 2009.

On June 16, 2010, Rapaport filed a Complaint in this Court, alleging breach of contract and several other claims against Soffer. On September 21, 2010, Soffer filed a Motion to Dismiss the Complaint because of improper venue, explaining that the case belongs in arbitration instead.

Although Soffer's Motion is labeled a Motion to Dismiss and uses the term "improper venue," the issue of whether a claim belongs in arbitration rather than before a federal court is not a matter of venue. Instead, Soffer's Motion is better understood as a Motion to Stay the Proceedings Pending Arbitration under Section 3 of the Federal Arbitration Act ("FAA") and/or a Motion to Compel Arbitration under Section 4 of the FAA. 9 U.S.C. §§ 1–16. Since the Ninth Circuit has held that procedural requirements in litigation "should be more liberally construed for pro se litigants," Abassi v. INS, 305 F.3d 1028, 1032 (9th Cir. 2002), we will construe Soffer's Motion accordingly.

**II. Analysis**

**A. Motion to Stay Pending Arbitration**

We may properly construe Soffer's Motion as a Motion to Stay the Proceedings Pending Arbitration since Soffer argues that the Court should not consider this case because the Agreement "mandates that any disputes be heard by the [AAA]" and "[t]hose procedures have yet to be

exhausted." (Motion to Dismiss 5.) Under Section 3 of the FAA, a written arbitration agreement allows a party to request that this Court refer the issue to arbitration "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Both parties admit that the Agreement requires all disputes to be settled in arbitration with the AAA, so the only issue before this Court is whether Soffer is "in default in proceeding with such arbitration" or whether "such arbitration has been had in accordance with the terms of the agreement" already. If either of these conditions is met, the Court must deny the Motion.

The arbitrator and the AAA "closed" or "terminated" the arbitration because they had "not received [Soffer]'s $16,650.00 to cover the neutral's compensation and expenses for the hearings." (Opposition to Defendant's Motion to Dismiss, Exhibit 4, 1.) As Soffer himself admits, due to a lack of resources he was no longer paying "his portion of the arbitration fees." (Motion to Dismiss 4.) Since it was Soffer's failure to pay his portion of the fees that resulted in the termination of the arbitration, this Court finds that Soffer is "in default in proceeding with such arbitration" and Soffer therefore cannot bring a motion to stay pending arbitration under FAA Section 3.[1]

Soffer argues that "[t]he arbitrator *never* entered or considered entering a default against the Defendant due to his inability to pay the arbitration fees" and that "[t]he arbitrator simply closed the arbitration because *neither* party paid the arbitration fees." (Response to Plaintiff's Opposition 3, emphasis in original.) Although neither party has seen fit to share with this Court additional documentation of the portion of the arbitration that took place prior to termination (beyond the single letter from the arbitrator regarding Martin Rapaport and the three emails from the AAA regarding the termination of the arbitration), it is evident from the limited record available that Soffer was supposed to pay an additional $16,650 toward the arbitration and that the termination resulted from his lack of payment, regardless of his reasons for doing so. Soffer may be correct that none of the

---

[1] Black's Law Dictionary defines "default" as "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." Black's Law Dictionary "default" (9th ed. 2009).

3

evidence indicates that the arbitrator had formally entered an order of default against him due to his inability to pay the arbitration fees.  However, the Ninth Circuit has consistently found that the failure by a party to pay fees in arbitration will prevent that party from successfully moving to compel arbitration in the same case in the future.  See Brown v. Dillard's, Inc., 430 F.3d 1004, 1013 (9th Cir. 2005) ("The American Arbitration Association could not compel Dillard's to pay its share of the filing fee, and in the absence of the fee it could not proceed.  Brown had no choice but to come to court."); Sink v. Aden Enters., 352 F.3d 1197, 1198 (9th Cir. 2003) (moving party's "failure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration" such that the moving party could not compel the Court to return the case to arbitration later).  Lack of a formal ruling of default from the arbitrator does not change this reality.

Further, the fact that the AAA arbitration rules allow the arbitrator to ask Rapaport whether Rapaport would like to pay in order to prevent termination does not create an obligation for Rapaport to do so, nor does it change the fact that Soffer owed the unpaid fees.  AAA Employment Arbitration Rules and Mediation Procedures (effective July 1, 2006), Rule 47.  Soffer starts off by characterizing this part of the AAA rules as stating that "if one party cannot pay, the arbitrator shall ask the other party to pay the costs of arbitration in order for the arbitration to continue."  (Motion to Dismiss 4.) He later characterizes this part of the rules as stating that "in the event that one party cannot pay, the other party be called upon to pay the costs of arbitration," implying that Rapaport was required by the rules to pay the portion of Soffer's fees that he had not paid. (Response to Plaintiff's Opposition 3.) This equivocation between whether the AAA rules require or merely allow Rapaport to pay the unpaid portion of Soffer's fees in order to keep the arbitration going is not enough to shift the responsibility for termination away from Soffer.  Finally, any claims that Rapaport is to blame for Soffer's inability to pay the fees because Rapaport generated "unnecessary hearings and disputes" in arbitration in order to avoid a negative outcome in that setting, (Motion to Dismiss 4), were issues more properly addressed by the arbitrator than by this Court.

**B. Motion to Compel Arbitration**

As stated above, this Court may also properly construe Soffer's Motion as a Motion to Compel Arbitration, since Soffer argues that the Court should "direct that the Plaintiff . . . continue with arbitration if it wishes to pursue a case." (Motion to Dismiss 6.)  Under Section 4 of the FAA, "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  Unlike Section 3, Section 4 of the FAA does not have an express requirement that the moving party not be "in default" in the arbitration.

However, the Ninth Circuit has clearly held that "a party to an arbitration agreement may not compel arbitration of claims under FAA § 4 where a prior default in arbitration of those claims precludes that party from obtaining a stay of litigation pending arbitration under § 3." Sink v. Aden Enters., 352 F.3d 1197, 1201 (9th Cir. 2003). Since this Court finds that Soffer is precluded from obtaining a stay by his prior default in arbitration under Section 3 of the FAA, Soffer may not compel arbitration in this case under Section 4 either.

**III. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (#8) is **DENIED**.

DATED: May 12, 2011.

_____
Kent J. Dawson
United States District Judge