UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EZRIEL RAPAPORT, as trustee of the RAPAPORT 2006 GRANTOR TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AVI SOFFER,<br><br>Defendant. | Case No. 2:10-cv-935-MMD-RJJ<br><br>ORDER |

Before this Court is Plaintiff Rapaport 2006 Grantor Trust's Motion to Strike Amended Answer and Motion to Dismiss Counterclaim (dkt. no. 40) and Motion to Seal (dkt. no. 41). For the reasons discussed below, Plaintiff's Motion to Strike is denied, Plaintiff's Motion to Dismiss is granted in part and denied in part, and Plaintiff's Motion to Seal is granted.

**I.    BACKGROUND**

The instant case arises from a dispute between Ezriel Rapaport, as Trustee of the Rapaport 2006 Grantor Trust ("Trust"), and Avi E. Soffer ("Soffer"), owner of the Watch Dealers Network ("the Network"), a Nevada corporation. The dispute centers on a January 7, 2008, agreement ("the Agreement") between Soffer and the Trust concerning the sale of the Network's assets to the Trust. The Agreement mandated that the Network's assets would be transferred to a new company, THEWDN.LLC ("the Company" or "WDN"), whose board would be controlled by two members appointed by

Rapaport and one by Soffer. Soffer was to sell to the Trust all of Soffer and the Network's watch-related assets in exchange for $500,000 and a 49% ownership share in WDN; WDN would then employ Soffer and others under certain terms and conditions. Among them were two terms that are the lynchpin of this lawsuit. First, Soffer would remain on WDN's payroll, provided that the Company's profitability was enough to pay his salary. Second, the Agreement includes a buyout provision wherein the Trust can, at a predetermined formula based on WDN revenue and profits, buy out the remaining 49% of Soffer's shares in the Company. After the signing of the agreement and the sale of the Network, however, disagreements arose between the parties concerning several issues under the Agreement.

The Trust brought various contract and tort claims against Soffer alleging that the assets of the Network were improperly held by Soffer. Soffer counterclaimed, arguing that the Trust deceived Soffer into the sale based on misrepresentations surrounding the Trust's capacity to oversee WDN, various acts of mismanagement of WDN with the intention of driving down the viability of WDN, and various breaches of the Trust's fiduciary and contractual duties to Soffer. Soffer contends that these actions resulted in a direct injury to him based on the salary and buyout provisions of the Agreement.

In response to the Complaint, Soffer filed a Motion to Dismiss (dkt. no. 8), which was denied. Thereafter, Soffer filed an Amended Answer and Counterclaim (dkt. no. 36) and a Third-Party Complaint (dkt. no. 50) against Michael Rapaport (Ezriel Rapaport's father and chief executive of the Trust), Ezriel Rapaport, and various individual employees of WDN. The Trust filed a Motion to Dismiss the Third-Party Complaint (dkt. no. 51), which this Court granted due to Soffer's failure to respond (dkt. no. 52). As a result, all claims against the individual executives and employees of WDN were dismissed. The counterclaims against the Trust are the subject of the Trust's pending Motion to Dismiss.

## II. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged— but not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory."

*Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

### III.   DISCUSSION

####   A.   Procedural Issues

The Trust's Motion raises four preliminary procedural issues which must be disposed of at the outset.

#####        1.   Motion to strike amended answer

Plaintiff, within its Motion to Dismiss, asks this Court to strike Defendant's Amended Answer, arguing that Defendant's "affirmative allegations" are improper. In Defendant's Amended Answer, Defendant responded to various allegations in the Complaint by offering his own version of the facts.

The Court finds Plaintiff's request to strike Defendant's Answer overly technical. A plain reading of the Amended Answer makes clear what allegations Defendant is denying (*see, e.g.*, dkt. no. 37 at ¶ 77) and what allegations Defendant admits (*see, e.g.*, *id.* at ¶ 104). Whatever additional information Defendant seeks to provide in addition to a denial is well within his right. In any circumstance where Defendant makes a so-called affirmative allegation, this Court will construe that as a denial of the allegation. The Court thus denies the Trust's request to strike the Amended Answer.

#####        2.   Standing

The Trust's second threshold argument is that Soffer has no standing, on his own, to bring a claim against the Trust for wrongs committed to the corporation. Soffer argues that he can file a direct suit (as opposed to a derivate shareholder's suit) in cases involving a closely held corporation where a majority shareholder has a fiduciary duty to a minority shareholder.

Courts, including this one, have recognized the fiduciary duty owed by majority shareholders to minority shareholders in closely held corporations:

> The policy behind adopting these fiduciary duties in closely held corporations is that minority shareholders who disagree with the direction or governance of the close corporation must rely on contractual or

statutory remedies, which are often nonexistent, impractical, or inadequate ... [and][b]y adopting this broader fiduciary obligation for close corporation shareholders, alternative remedies exist for oppressed shareholders, such as an equitable claim for dissolution or a claim for breach of fiduciary duty.

*Spitzmesser v. Tate Snyder Kimsey Architects, LTD.*, No. 10-1700, 2011 WL 2552606, at *2 (D. Nev. June 27, 2011) (internal quotations omitted); *see Carstarphen v. Milsner*, 693 F. Supp. 2d 1247, 1249-50 (D. Nev. 2010). This exception to the general rule "allows a minority shareholder to file a direct or individual action against another shareholder for wrongs which would normally have to be brought derivatively on behalf of the corporation." *Simon v. Mann*, 373 F. Supp. 2d 1196, 1198 (D. Nev. 2005). In *Simon*, we determined that a corporation much like WDN was closely-held and thus subject to a direct suit of its minority shareholder. Closely held corporations include those corporations that have two basic characteristics: the number of shareholders of a corporation is few, and the corporation has taken steps to keep outsiders from acquiring any interest in the enterprise. *See Simon*, 373 F. Supp. at 1200 (citing 1 F. Hodge O'Neal & Robert B. Thompson, Close Corporations and LLCs: Law and Practice § 1:4 (Rev.3d ed.2004)).

Here, WDN has all the hallmarks of a closely held corporation. The corporation appears only to have two shareholders: the Trust owns 51% of the shares, and Soffer owns 49% of the shares. As a minority shareholder, Soffer may pursue direct claims against the Trust.

### 3. Alter ego

The Trust contends that since Martin Rapaport is no longer a party to the litigation, no alter ego claims could be made by Soffer. This contention misunderstands the import of the alter ego allegations. While Martin Rapaport is not presently a party to the litigation, his conduct as the head of the Trust is properly the subject of this litigation. Given its procedural posture, this Court must decide this motion in the light most favorable to the nonmovant and accepts Soffer's allegations that the Trust is merely Martin Rapaport's alter ego as true.

### 4. Claim against a trust improper

Ezriel also seeks dismissal on the basis that Soffer's counterclaim improperly named the Trust, and not he as the trustee, as the counterdefendant, citing to NRS § 163.120(1) (stating that a claim against a trust "may be asserted against the trust by proceeding against the trustee"). The Complaint was brought by Ezriel Rapaport, as Trustee of the Rapaport 2006 Grantor Trust, against Soffer. Soffer counterclaimed against the Trust, not Ezriel as Trustee. Soffer's Counterclaim against the Trust, and not against the trustee, is proper.

### B. Substantive claims of relief

Turning now to the substantive issues, Soffer has alleged eight causes of action against the Trust. The Court will address them in the order briefed by the Trust in its Motion.

### 1. Breach of contract

Soffer alleges that he performed his obligations under the Agreement, but the Trust was in breach for a series of failures that have resulted in losses of salary and compensation for Soffer. These actions, Soffer claims, were conducted in breach of the Agreement which expressly provided for these services. The Trust seeks dismissal of these claims on the ground that these actions were not obligations of the Trust, and that the only obligation the Trust had per the Agreement was to provide funds for the purchase of WDN (which it did).

Under Nevada law, in order to show a breach of contract, the plaintiff must show: (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. *Saini v. International Game Technology*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865).

Soffer has alleged the existence of a valid contract between the Trust and Soffer concerning the formation of a new company, WDN. Soffer has also alleged a breach of that contract based on a series of acts by the Trust which contravened the terms of this contract, including failure of the Trust to respond to critical business issues, failure to

6

provide adequate customer service, failure to provide adequate information technology services, failure to provide adequate financial management, failure to maintain a relationship with a key business partner, and seizure and "locking out" of Soffer from WDN management. These acts, Soffer claims, are in contravention of the terms of the Agreement. Lastly, Soffer has sufficiently alleged damage as a result of the breach of the Agreement in the form of lost compensation and a devalued buyout owing to poor management of WDN.

The Trust asks the Court to dismiss the breach of contract claim by pointing to various provisions of the Agreement and arguing that the Agreement as signed did not create any duties to Soffer to manage the company as Soffer wished. The Court declines, however, to consider the Agreement which the Trust separately filed under seal and is not part of the pleadings, in deciding the Trust's Motion to Dismiss. *See* Fed. R. Civ. P. 12(d) (court may exclude matters outside the pleadings). Soffer's breach of contract claim thus survives.

**2.     Breach of implied covenant of good faith and fair dealing**

"An implied covenant of good faith and fair dealing is recognized in every contract under Nevada law." *See Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1311 1256 (Nev. 1998). "Where one party to a contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Morris v. Bank of America Nevada*, 886 P.2d 454, 457 (Nev. 1994) (quoting *Hilton Hotels v. Butch Lewis Productions*, 808 P.2d 919, 922 (Nev. 1991)).

Soffer's allegations establish the elements of his claim for breach of the implied covenant of good faith and fair dealing. Soffer alleges that the Trust failed to manage WDN properly and thus interfered with the Agreement because WDN's performance directly impacted his salary and the buyout provisions of the Agreement. Soffer also alleges that the Trust misrepresented various elements of their business, including their IT and customer service capacities, and that the Trust neglected to maintain important

business relationships. Such allegations support a claim that the Trust breached the Agreement's implied covenant of good faith and fair dealing by trying to drive WDN's price down for a future buyout and to remove the Trust's obligation to pay Soffer's profit-contingent salary.

### 3. Tortious breach of implied covenant of good faith and fair dealing

"The tort action for breach of the implied covenant of good faith and fair dealing requires a special element of reliance or fiduciary duty, and is limited to rare and exceptional cases." *Great Am. Ins. Co. v. General Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997) (internal quotations and citations omitted). Bad faith tort actions are limited to those cases involving special relationships, including those between fiduciaries. *Id.* Soffer alleges that the relationship between the Trust and Soffer is a fiduciary one. In considering the Trust's Motion, the Court must accept this allegation as true. Moreover, a reasonable juror may find that the majority shareholder (the Trust) of this closely held corporation (WDN) owes a fiduciary duty to the minority shareholder (Soffer), particularly in light of the reliance interest implicated by the salary and buyout clauses of the Agreement. For this reason, this fiduciary relationship qualifies as the kind upon which a tort claim for breach of the implied covenant of good faith and fair dealing may be based.

### 4. Breach of fiduciary duty

Directors have certain fiduciary obligations to the corporation and to its shareholders, including a duty of care and a duty of loyalty. *See Horwitz v. Southwest Forest Industries, Inc.*, 604 F. Supp. 1130, 1134 (D. Nev. 1985). Nevada law presumes that the acts of corporate directors are honest and in the best interests of the company. NRS § 78.138 (codifying the business judgment rule); *see Foster v. Arata*, 325 P.2d 759, 764 (Nev. 1958). "[A] breach of fiduciary duty claim seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship." *Stalk v. Mushkin*, 199 P.2d 838, 843 (Nev. 2009). In order for a

director to be held liable for a breach of their fiduciary duty, the breach must involve intentional misconduct, fraud, or a knowing violation of the law. NRS § 78.138(7)(b); *see also* Fed. R. Civ. P. 9(b) (requiring heightened pleading standard for claims of fraud).

As discussed above, Soffer's allegations suggest a fiduciary relationship flowing from the Trust to Soffer. The Trust's arguments to the contrary are unavailing. Though it cites authority for the proposition that parties who have merely contracted with one another are not fiduciaries, this is not such a case. Soffer has adequately pled that the Trust knowingly engaged in a series of actions with the intent of devaluing the company in violation of its fiduciary obligations to Soffer. For these reasons, Soffer's breach of fiduciary duty claim survives also.

### 5. Fraud and intentional misrepresentation

"The elements of intentional misrepresentation are a false representation made with knowledge or belief that it is false or without a sufficient basis of information, intent to induce reliance, and damage resulting from the reliance." *Collins v. Burns*, 741 P.2d 819, 821 (Nev. 1987).

Soffer claims Michael Rapaport intentionally misled Soffer into signing the Agreement by representing that he had a large staff capable of providing the Network with infrastructure, customer service, global outreach, and improved IT technology. Michael Rapaport allegedly also represented that he would bridge the membership between RapNet and the Network. These representations were made, according to Soffer, with knowledge of their falsity and with the intent to induce Soffer to agree to the sale of the Network. In turn, Rapaport would have access to Soffer's business plans and important proprietary information.

Given the allegations made by Soffer, enough facts are pled with specificity to make the intentional misrepresentation claim survive a motion to dismiss. Assuming, as the Court must, that the Trust managed poorly the assets of WDN, it is plausible based

1  on the facts alleged by Soffer that the Trust knew that it wanted to raid the Network
2  without maintaining its profitability.
3  The Trust cites *Las Vegas Sands, Inc. v. Suen*, No. 53163, 2010 WL 4673567, at
4  *8 (D. Nev. Nov. 17, 2010) for the proposition that mere failure to fulfill a promise does
5  not give rise to a promissory fraud claim.  However, this Court in *Suen* also said that
6  such a showing can be made if there is evidence the defendant had no intention of
7  performing the promise at the time it was made.  *Id.*  Soffer makes precisely this
8  allegation.  Taken in the light most favorable to Soffer, the Motion to Dismiss the
9  intentional misrepresentation claim is denied.

### 6. Negligent misrepresentation

Under Nevada law, negligent misrepresentation is defined as follows:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Barmettler v. Reno, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998).

For the same reasons that apply to Soffer's intentional misrepresentation claim, Soffer's negligent misrepresentation claim survives the Trust's motion.  Given the specificity of the facts alleged, Soffer states facts that plausibly suggest Rapport failed to exercise reasonable care in making those representations.

### 7. RICO

Soffer additionally makes a civil RICO claim against the Trust.  "A civil RICO cause of action may be based upon allegations and proof that the defendants engag[ed] in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents."  *Hale v. Burkhardt*, 764 P.2d 866, 867 (Nev. 1988) (quoting NRS § 207.390).  In turn, "crimes related to racketeering" include "taking property from another under circumstances not

amounting to robbery" and "obtaining possession of money or property valued at $650 or more." NRS § 207.360 (listing "crimes relating to racketeering"). Moreover, a plaintiff must also show a relationship and continuity of the alleged criminal acts to constitute or threaten long-term criminal activity. *See H.J. Inc. v. Nw. Bell Telephone Co.*, 492 U.S. 229, 237-39 (1989) (interpreting a federal RICO statute to require the plaintiff to show a relationship and continuity of the criminal acts sufficient to constitute or threaten long-term criminal activity); *see Allum v. Valley Bank of Nevada*, 894 P.2d 297, 298 n. 2 (Nev. 1993) ("Nevada's racketeering statutes … are patterned after the federal … RICO statutes").

The RICO predicate crimes alleged by Soffer are the misrepresentation claims. However, there is no allegation that the Trust's misconduct was part of a long-term criminal trajectory. Even if two or more technical misrepresentations occurred, they relate only to the allegedly fraudulent purchase of the Network, and nothing more. Soffer thus fails to state a RICO claim upon which relief can be granted.

### 8. Accounting

Lastly, Soffer states a claim for an accounting. The Trust seeks to dismiss the claim by mistakenly arguing that accounting is a remedy, not a claim for relief. "Courts typically grant an accounting where a fiduciary relationship exists between the parties." *See Oracle USA, Inc. v. Rimini Street, Inc.*, No. 10-106, 2010 WL 3257933, at *6 (D. Nev. Aug. 13, 2010). This action is available in order to obtain a judicial settlement of the accounts of the parties, particularly where the circumstances surrounding account transactions are in dispute. *Id.* Here, the Court will not dismiss the accounting claim while pending claims surrounding WDN survive dismissal.

### IV.    CONCLUSION

In summary, the following counterclaims survive the Trust's Motion: breach of contract, breach of implied covenant of good faith and fair dealing, tortious breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, intentional

misrepresentation, negligent misrepresentation, and accounting. Soffer's RICO claim is dismissed.

Accordingly, IT IS HEARBY ORDERED that the Trust's Motion to Strike Amended Answer is DENIED and Motion to Dismiss Counterclaim is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's Motion to Seal is GRANTED.

DATED THIS 29th day of June 2012.

_____
UNITED STATES DISTRICT JUDGE