UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EZRIEL RAPAPORT, as Trustee of the RAPAPORT 2006 GRANTOR TRUST, | |
| Plaintiff, | 2:10-cv-935-MMD-RJJ |
| vs. | Consolidated with: 2:12-cv-57 |
| AVI SOFFER, an individual; DOES 1 through 5 and ROE BUSINESS ENTITIES 1 through 5 inclusive, | **O R D E R** |
| Defendants. | |

This matter came before the Court for a hearing on November 29, 2012. The hearing was continued on December 13, 2012, and then December 14, 2012. At issue is Plaintiff's Second Motion for Sanctions Re Discovery (#71). The Court has considered the Motion, Defendant's Opposition (#75), and the Plaintiff's Reply (#81). The Court has also considered the arguments and representations presented at the hearing.

**BACKGROUND**

This case involves the purchase of an online trading network known as the Watch Dealer's Network (WDN) by the Plaintiff from the Defendant, Soffer. WDN was intended to operate in a manner similar to Amazon.com, with the distinction that it was for luxury watch merchants. The Plaintiff Rapaport paid $500,000.00 for all the assets of WDN, and had control

of the business for approximately a year and a half.  Both Rapaport and Soffer were members of the board of WDN.  Around a year an a half after Rapaport paid Soffer, Soffer asserts that he took "emergency measures" as a board member of WDN in order to address what he believed was Rapaport's inability to run the company.   In response, Rapaport filed suit against Soffer on June 16, 2010.  Complaint (#1).

Discovery in this case closed on August 31, 2012.  Order Setting Discovery Deadline (#65).  However, a significant amount of the discovery has not been completed due to disputes between the parties.  Those disputes prompted a series of discovery motions.  *See* Plaintiff's Second Motion for Sanctions Re Discovery (#71); Plaintiff's Motion for Protective Order (#73) and Sanctions (#74); Defendant's Request for Order to Compel (#78); and in the consolidated case No. 2:12-cv-57-MMD-RJJ, Soffer's Motion to Deem Admissions (#30)

The present motion centers around the deposition of Defendant Avi Soffer. Plaintiffs' Counsel, Mario Lovato, deposed Soffer on July 13, 2012. Deposition Transcript, attached as Exhibit 1 at page 32, to Second Motion for Sanctions (#71). Soffer was represented by Adam Wax and Efrem Rosenfeld of Rosenfeld, Bauma, & Forbes[1] at the deposition. *Id*. Wax was the lead attorney. *Id*. Giving rise to this dispute, Lovato asserts that both Soffer and Wax prevented the deposition from proceeding properly.  Accordingly, he has requested an additional day to depose Soffer.  Lovato suggests that the deposition take place at the U.S. District Court for the District of Nevada.  Lovato, on behalf of the Plaintiff, has also requested that the Court sanction both Soffer and his counsel by imposing all fees and costs associated with deposing Soffer and the bringing of this motion.

The Court, in an attempt to collect some clarification on this and other discovery disputes, held a hearing on November 29, 2012.  The attorney present for Soffer was Guinness I. Ohazuruike, Esq. from Rosenfeld, Bauma, & Forbes. At that hearing it became apparent that the Ohazuruike was not responsible for and was not reasonably familiar with the present motion nor

---

[1] At the time of the deposition the law firm was named  Rosenfeld, Bauma, & Forbes. Efrem Rosenfeld represented to the Court at the hearing on December 27, 2012 that the firm has since changed to Rosenfeld & Bauma.

- 2 -

1   was we aware of what transpired at the deposition. Ohazuruike has been assigned to Soffer's
2   case very after the events leading to the present dispute had already occurred. Accordingly, the
3   Court continued the hearing to December 13, 2012, and ordered Efrem Rosenfeld, Esq., who was
4   present for the deposition, Ohazuruike, and Defendant Avi Soffer to all be present for the
5   continued hearing. Rosenfeld, Ohazuruike, and Soffer all attended the December 13, 2012,
6   hearing. Minutes of Proceeding (#85). The hearing did not conclude on December 13, 2012, and
7   was continued again to December 14, 2012. *Id*. Rosenfeld, Ohazuruike, and Soffer were all
8   present for the December 14, 2012, hearing as well. Minutes of Proceeding (#86). The Court
9   heard the parties representations and took the matter under submission.

10  **<u>DISCUSSION</u>**

11       Rapaport alleges that both Soffer and Wax's conduct at the deposition violated
12  Fed. R. Civ. P. 30(d) and Fed. R. Civ. P. 37(a)(4). Specifically, Rapaport alleges: (1) Soffer
13  engaged in non-responsive narratives to avoid answering questions; (2) Soffer sought to create a
14  false record by making "bizarre and impertinent statements"; (3) throughout the deposition,
15  Soffer refused to give any estimates so as to avoid giving meaningful testimony; (4) Soffer
16  repeatedly adopted the strategy of feigning lack of knowledge, providing "I don't know"
17  responses so as to avoid answering questions; and (5) Soffer's Counsel engaged in "bizarre,
18  harassing and improper conduct". Second Motion for Sanctions (#71). This conduct, Rapaport
19  asserts, violated Fed. R. Civ. P.. 30(d), which prohibits conduct which impedes, delays, and
20  frustrates a deposition, and Fed. R. Civ. P.. 37(a)(4), which prohibits evasive and incomplete
21  responses. *Id*.

22       In the Response, Defense counsel argues that the Plaintiff's concerns are "trivialities that
23  should be ignored with good humor." Response to Second Motion for Sanctions (#75) at 2, lines
24  18-19. Notably, Defense Counsel fails to cite a single authority in the entire Response.
25  Response to Second Motion for Sanctions (#75). Rather, at only two points in the entire filing
26  does Defense Counsel acknowledge that there is applicable law.[2] Response to Second Motion for

27
28       [2]First, the Response at page 3 mentions the Federal Rules, but fails to state which Rule or Rules it is referencing nor does it give any citation. Response to Second Motion for Sanctions (#75).

- 3 -

1  Sanctions (#75) at 3, lines 6-7, and at 6, lines 25-28.  Finally, at the hearing, Rosenfeld affirmed
2  that he believed Soffer or Wax's conduct was acceptable at the deposition.  He asserted that the
3  transcript was not a full representation of the deposition because it could not convey attitudes and
4  tone.
5        The applicable law for this dispute is the Federal Rules of Civil Procedure 30 and 37.  *See*
6  Fed. R. Civ. P. 30(d) and Fed. R. Civ. P. 37(a)(4). The court may impose an appropriate
7  sanction—including the reasonable expenses and attorneys' fees incurred by any party—on a
8  person who impedes, delays, or frustrates the fair examination of the deponent. Fed. R. Civ. P.
9  30(d). Additionally, Rule 37(a)(4) prohibits evasive or incomplete answers or responses.

10  **I.    Deposition Conduct**

11      A.    <u>Non-Responsive Narrative</u>

12        Rapaport alleges that Soffer engaged in non-responsive narrative to avoid answering
13  questions.  He points to five lengthy exchanges during the deposition as examples of this
14  behavior. Second Motion for Sanctions (#71) at pages 3-6.  In each of the given examples,
15  Rapaport's counsel asks Soffer a pointed question, Soffer embarks on a narrative that has little to
16  do with the question asked, and refuses to give yes or no answers once requested to do so by
17  Rapaport's counsel.  *Id*. For example, one question asked of Soffer was wether he instructed Joe
18  Nelson to stop payments to the Rapport Office. Second Motion for Sanctions (#71) at 4-5;
19  Deposition Transcript at 170-172, attached as Exhibit 1 at page 32, to Second Motion for
20  Sanctions (#71). Soffer answered with a narrative about how he had conversations with Joe
21  Nelson about how Rapaport showed "illogical, irrational, and very questionable behavior," was
22  "insane", and was "hijacking" the company. *Id*.  He went on to conclude that "If [Nelson] wasn't
23  going to send [payments] to Rapaport because he thinks Rapaport's insane, then maybe he was
24  advised to send them where he felt more comfortable." *Id*. At the hearing, when questioned about
25  this specific response, Rosenfeld stated that he believed Soffer, by saying "maybe [Nelson] was

---

27  Second, the Response at page 6 states "Decided cases suggest that courts and litigants should
28  consider these factors in evaluating whether the imposition of sanctions for Rule 30(d), (37), violations is warranted . . ." However, no cases are actually cited. *Id*.

- 4 -

1    advised to send them where he felt more comfortable", was answering "yes" to the question.
2    Similarly, Soffer's counsel at the deposition, in response to these sorts of answers by Soffer,
3    stated that Soffer was answering questions "just fine," declined to take a break to talk to his
4    client, and interrupted only when he noticed Rapaport's Counsel was whispering to Rapaport
5    during one of Soffer's answers. *Id*. However, a simple reading of Soffer's response to the above
6    question indicates that there was no actual answer, just a non-responsive narrative. Rosenfeld's
7    contention that Soffer was indicating "yes" with his answer, is not convincing.

8        At other points in the deposition, such as the five examples given by Rapaport, Soffer
9    gave similarly non-responsive narratives. Soffer's counsel defends this behavior by arguing "*[i]n*
10   *some instances*, the questions were fully answered except that the answers were not what the
11   deposing attorney had hoped to hear or needed to prevail in his claims." Response to Second
12   Motion for Sanctions (#75) at 3-4, lines 27-1 (emphasis added). Thus, Soffer's counsel
13   concedes that at least some questions were not fully answered. Furthermore, a thorough look at
14   all the examples provided indicates that Soffer was engaging in narratives which were evasive at
15   best, but primarily non-responsive.

16       B.    <u>Impertinent Statements</u>

17       Rapaport alleges that Soffer made "bizarre and impertinent statements" thus impeding the
18   deposition. He argues that first, Soffer stopped answering a question to point out "for the record"
19   that Rapaport was sleeping. Second Motion for Sanctions (#71) at 6-7; Deposition Transcript at
20   141-142, attached as Exhibit 1 at page 32, to Second Motion for Sanctions (#71). Second, Soffer
21   called Rapaport's counsel a bully, told him to speak more clearly and accused him of making
22   faces. Second Motion for Sanctions (#71) at 7; Deposition Transcript at 143, attached as Exhibit
23   1 at page 32, to Second Motion for Sanctions (#71). Third, Soffer continuously interrupted and
24   was instructed twice by the Court Reporter to stop interrupting. Second Motion for Sanctions
25   (#71) at 7-9; Deposition Transcript at 140-141, 144, attached as Exhibit 1 at page 32, to Second
26   Motion for Sanctions (#71). Fourth, he laughed when his counsel was objecting to whether he
27   had to answer whether there were three board members. Second Motion for Sanctions (#71) at 9;
28   Deposition Transcript at 195-196, attached as Exhibit 1 at page 32, to Second Motion for

Sanctions (#71).

In the Response, Soffer's counsel defends this behavior and asserts that it "could be ignored or take[n] with [a] good sense of humor." Response to Second Motion for Sanctions (#75) at 4, lines 6-8. He argues that Rapaport's attorney "has a higher than normal sensitivity to human conduct or the long lingering bitterness generated by this case has indeed permeated beyond the litigants . . ." *Id,* lines 18-21. At the hearing, Rosenfeld claimed that there was a lot of tension in the room and the transcript fails to reflect that tension. Thus, Soffer's counsel is arguing that Soffer's conduct was appropriate because this case has "long lingering bitterness." *Id*. Soffer's counsel is incorrect. In cases with long lingering bitterness, the attorneys should strive to cooperate with one another, operate with an even higher level of professionalism, and instruct their clients to do the same. Soffer's counsel completely failed in this regard.

While alone any of the above behaviors would not indicate a violation of Rule 30(d), they do point to the overall antagonistic and impeding nature of the deposition.

      C.     Refusal to Give Estimates

Rapaport argues that Soffer refused to give any estimates so as to avoid giving meaningful testimony. Second Motion for Sanctions (#71) at 9. Soffer continuously stated that he would not provide estimates because he only wanted to give "facts." Second Motion for Sanctions (#71) at 9-16. He refused to estimate WDN's net profits, number of paying members,[3] amount of money being earned at the time of sale, and amount of money deposited to a safekeeping account, among other things. Second Motion for Sanctions (#71) at 13-16. Soffer asserts that his answers were appropriate and that he did not have to give any estimates because they call for speculation. Response to Second Motion for Sanctions (#75) at 3, lines 6-7. This "blanket refusal," Rapaport argues, is improper because many of the estimates were clearly within Soffer's knowledge. Reply to Second Motion for Sanctions (#81) at 2, lines 9-11.

Based on the transcript of the deposition, it appears that Soffer was indeed just trying to

---

    [3]     Soffer went so far as to say he did not know whether WDN had one paying member. Second Motion for Sanctions (#71) at 13-14; Deposition Transcript at 75, attached as Exhibit 1 at page 32, to Second Motion for Sanctions (#71).

- 6 -

1  be difficult and impede the deposition. This conclusion can be reached because it turns out that
2  Soffer was actually willing to give estimates when those estimates were part of his long evasive
3  narratives. He only refused to give estimates when directly asked to do so.  For example, when
4  asked if he withdrew any money from a WDN credit card as cash, after a long narrative filled
5  with accusations about Rapaport that had nothing to do with the question, he states that he
6  "withdrew approximately $8,000 in a cash advance from that account and deposited it into a
7  safekeeping account . . ." Deposition Transcript at 161-162, attached as Exhibit 1 at page 32, to
8  Second Motion for Sanctions (#71).  Thus, he was not truly opposed to giving estimate, he was
9  just opposed to answering questions. Further, Soffer specifically stated he would not give
10 estimates because he prefers facts, thus admitting that he just did not want to answer the
11 question.  Deposition Transcript at 181, attached as Exhibit 1 at page 32, to Second Motion for
12 Sanctions (#71).
13      His refusal to give estimates is yet another example of how Soffer intentionally impeded
14 the deposition.

   D. <u>"I don't know" Responses</u>

16     Rapaport argues that Soffer repeatedly adopted the strategy of feigning lack of
17 knowledge, providing "I don't know" responses so as to avoid answering questions. Soffer on the
18 other hand asserts that it is not improper to say "I don't know or I have forgotten, even if the
19 information sought is simple and within the expected knowledge of the deponent."  Response to
20 Second Motion for Sanctions (#75) at 5, lines 1-3. He goes on to explain that when a witness
21 does not know what he ought to know, that will make an impression on the judge and jury, but it
22 is allowable. *Id.*, lines 6-9.
23     Here, Soffer is correct.  Soffer's testimony has made an impression on the Court.  He
24 went so far as to say he did not know: (1) what assets were transferred in the WDN sale, (2)
25 whether he had control of the WDN website, (3) whether he took control of credit card payments
26 (4) what he meant by "emergency measures" in his own cross claim (5) whether he had control of
27 the WDN telephone number (6) whether a person he personally paid to maintain the WDN
28 website was acting under his control, (7) whether he changed the WDN website passwords, and

(8) to which Rapaport Las Vegas Office deposing counsel was referring in one question.[4] Second Motion for Sanctions (#71) at 16-27.

In most of these instances, the Court cannot know for certain whether Soffer did or did not know these basic facts about WDN. It is possible he completely forgot this basic information and only retained the things he rambled on about in his non-responsive answers. However, when Soffer asked which Las Vegas Office deposing counsel was referring to and then later admitted he knew there was only one, it is clear he was merely attempting to delay the deposition. Second Motion for Sanctions (#71) at 26; Deposition Transcript at 153, attached as Exhibit 1 at page 32, to Second Motion for Sanctions (#71). Thus, in at least that instance, Soffer was yet again delaying and impeding his deposition.

### E. Defense Counsel's Improper Conduct

In addition to facilitating, refusing to correct, and encouraging the above behavior, Rapaport argues that Soffer's counsel engaged in improper conduct at two other portions of the deposition. First, at one point in the deposition, Wax improperly refused to let Soffer answer a question on the basis of attorney-client privilege. However, Soffer's other attorney, Rosenfeld, acknowledged that there was no privilege. Second Motion for Sanctions (#71) at 27. In defense of this conduct, Soffer's counsel asserts this was appropriate because, regardless of whether it was a proper objection, it was a "good faith objection" and Rapaport's counsel is "too sensitive." Response to Second Motion for Sanctions (#75) at 6, lines 11-15. This is an erroneous assertion. The objection could not have been in good faith if, even though Rosenfeld informed Wax that the objection was not proper, Wax continued to object. Additionally, arguing that opposing counsel is "too sensitive" for wanting an answer to a question is not a legal argument.

The second moment of alleged improper conduct occurred when Soffer's counsel refused to allow Rapaport's counsel to take a break. Second Motion for Sanctions (#71) at 27-29. Rapaport's counsel stated "Let's take a quick break." Deposition Transcript at 206-208, attached

---

[4] He later admitted that he knew there was only one Las Vegas Office. Second Motion for Sanctions (#71) at 26; Deposition Transcript at 153, attached as Exhibit 1 at page 32, to Second Motion for Sanctions (#71).

1  as Exhibit 1 at page 32, to Second Motion for Sanctions (#71).  Soffer's counsel responded "I
2  don't agree to taking a break." *Id.*  Rapaport's counsel then left anyway, apparently to use the
3  restroom. *Id*.  Soffer's counsel insisted the court reporter continue transcribing the deposition, put
4  on the record that he did not agree to the break, and marked the minutes that Rapaport's counsel
5  was out of the room. *Id*. During that time, Soffer, apparently attempted to make some legal
6  analysis, stated "Could this be a purposeful attempt at, a chilling attempt by an inappropriate or
7  perhaps sanctionable chilling effect by opposing counsel?" *Id.*  After Rapaport's Counsel was
8  gone for five  minutes, Soffer's counsel threatened to end the deposition, and Rapaoprt's counsel
9  returned to the room. *Id*.  Soffer's counsel indicated that he did not believe that Rapaport's
10 counsel had used the restroom. *Id*.

11       In the Response, Soffer's counsel defends this behavior stating that "[t]he issue of a break
12 was not properly handled by the deposing attorney and the reaction of the other couldn't have
13 been better."  Response to Second Motion for Sanctions (#75) at 6, lines 22-24.  However, at the
14 hearing, Rosenfeld acknowledged that the mood in the room was very tense and it was a good
15 time to take a break.  Rosenfeld also represented to the Court that he talked to his co-counsel
16 during the break and instructed him on proper deposition conduct.  Based on the deposition
17 transcript, that representation is false or the instruction failed. Deposition Transcript at 206-208,
18 attached as Exhibit 1 at page 32, to Second Motion for Sanctions (#71). Rosenfeld did not speak
19 during the break. *Id*. Based on this behavior, as well as the behavior throughout the deposition, it
20 appears that both Soffer and his counsel have impeded, delayed, and frustrated the fair
21 examination of Soffer.

22 **II.    Sanctions**

23       Fed. R. Civ .P. 30(d)(2) states that the "court may impose an appropriate sanction -
24 including the reasonable expenses and attorney's fees incurred by any party - on a person who
25 impedes, delays, or frustrates the fair examination of the deponent."  Here, therefore, because
26 Soffer and his counsel impeded, delayed, and frustrated the fair examination of Soffer, sanctions
27 under Rule 30 are appropriate.
28       Additionally, under Fed. R. Civ. P.. 37(a)(5)(A), once the Court grants a motion for

failure to cooperate in discovery, the Court must, "after giving an opportunity to be heard, require . . . the party or the attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  However, such an award is not appropriate if: "(I) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's non-disclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id*.

Here, the Court held a hearing on December 27, 2012, in order to give the Defendant an opportunity to be heard.  At that hearing, the Defendant failed to explain why a sanction would not be appropriate.  First, the Plaintiffs made a good faith attempt to encourage Soffer and his counsel to cooperate in Soffer's deposition.  Lovato asked Soffer to clarify and answer correctly throughout the deposition, and also gave Wax numerous opportunities to counsel Soffer in proper deposition conduct.  Second, there was no justification for Soffer and his counsel's lack of cooperation.  Soffer's counsel's suggestion that the disputed behaviors were "trivialities that should be ignored with good humor," is an attempt to obscure the outrageous behavior described above.  See Response to Second Motion for Sanctions (#75) at 2, lines 18-19. Finally, the Court specifically asked Soffer's counsel, Rosenfeld, whether there was any reason an award would be unjust.  Rosenfeld's only response was that the amount of costs and fees Lovato provided was "shocking" and he had never seen such a high amount.  The mere fact that the amount requested is large, is not an explanation for why an award would be unjust.  Accordingly, sanctions under Rule 37 are appropriate.

Rapaport has requested cost and fees associated with deposing Soffer and bringing this motion, as well as a second day to depose Soffer, preferably in the U.S. courthouse. Costs and fees as explained above, are appropriate. The amount of such fees will be addressed in a separate order.  However, in light of the many discovery impediments in this case, other motions presently before the Court, and the long past August 31, 2012, discovery deadline, the Court finds that an additional day of deposition would be superfluous. Thus, sanctions will be limited to costs and fees.

1  ...
2  ...
3  ...

### **CONCLUSION**

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that the Plaintiff's Second Motion for Sanctions Re Discovery (#71) is **GRANTED.**

DATED this __31st__ day of December, 2012

```
                                    _____
                                    ROBERT J. JOHNSTON
                                    United States Magistrate Judge
```

- 11 -